# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2023 ND 40

In the Interest of Brian K. Sternberg

Renata J. O. Selzer, Assistant State's Attorney,   Petitioner and Appellee

  v.

Brian K. Sternberg,          Respondent and Appellant

## No. 20220147

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Susan L. Bailey, Judge.

REVERSED.

Opinion of the Court by Tufte, Justice.

Renata J. Olafson Selzer, Assistant State's Attorney, Fargo, N.D., petitioner and appellee.

James D. Sandsmark, Fargo, N.D., for respondent and appellant; submitted on brief.

**Tufte, Justice.**

[¶1]   Brian Sternberg appeals from a district court order civilly committing him as a sexually dangerous individual. We reverse the order of the district court.

I

[¶2]   In 1992, Sternberg was convicted of corruption of a minor. He was incarcerated in late 1993 and remained on probation until January 1994. In 2000, the State charged Sternberg with committing three or more sexual acts with a child who was then his stepdaughter and under the age of fifteen. He showed pornographic films to her and cut her leg by throwing a pair of scissors at her. He also allowed two other males to sexually abuse her. Sternberg forced a five-year-old boy, who was also in a parental or guardian relationship with Sternberg, to eat his own feces, and on another occasion beat him with a belt. Both incidents caused physical and mental injury. Sternberg was charged with one class A felony and five class C felonies. He also has convictions involving deceitful behavior, including financial fraud and bad checks. The court sentenced him to incarceration from October 2000 to February 2021.

[¶3]   Peter Byrne, Ph.D., a licensed psychologist who conducted Sternberg's evaluation, testified that there was no record of Sternberg's having undergone treatment to deal with his "sexual interest or arousal to children" and reported that at the end of treatment it was recommended Sternberg continue sexual offender specific treatment. Sternberg has both pedophilic and antisocial personality disorders, which predispose him to intense sexual fantasies and urges and to disregard "the rights and wishes of others."

[¶4]   Dr. Byrne found that Sternberg scored a 5-6 on the Static 99R, an "above average" or "well above average" risk to sexually reoffend, meaning he is 3.77 times more likely to reoffend than the average sexual offender. Individuals with this score have a 14.2 percent recidivism rate. Sternberg had a dynamic

sexual risk measure of 6, which is a moderate risk of re-offense, and when considered together with the Static 99R, Sternberg is twice as likely to reoffend as the average sexual offender. Dr. Byrne concluded Sternberg is a "high risk" and is either likely to engage in further sexual abuse or is on the border of this criteria. Dr. Byrne also opined that Sternberg's coping strategies are insufficient given his condition, that he requires more treatment, and that he is still a "Sexually Dangerous Individual."

[¶5] Sternberg has not had any major non-sexual conduct violations in prison since 2019, nor has he had any sexual write-ups since 2015. According to his sexually dangerous individual evaluation, Sternberg's age, involvement in sexual offender treatment, and mental health treatment allow him to better cope with his antisocial personality disorder.

[¶6] The district court held a commitment hearing and granted the State's petition for civil commitment. The court reported that its biggest concern with releasing Sternberg is that he has been living in a supervised environment while incarcerated and "[i]mmediate release into the community without support or supervision would 'very likely result in a serious difficulty controlling his behaviors.'" On appeal, Sternberg argues the district court erred in finding the State had met its burden in proving that he is likely to engage in further acts of sexually predatory conduct and that he has serious difficulty in controlling behavior.

II

[¶7] This Court reviews civil commitments of sexually dangerous individuals under a modified clearly erroneous standard. *Matter of Knoke*, 2021 ND 240, ¶ 13, 968 N.W.2d 178 (citing *In re Nelson*, 2017 ND 28, ¶ 7, 889 N.W.2d 879). We will affirm a district court's decision "unless it is induced by an erroneous view of the law or we are firmly convinced the decision is not supported by clear and convincing evidence." *Id*. "The court must specifically state the facts upon which its ultimate conclusion is based." *In re Rubey*, 2012 ND 133, ¶ 9, 818 N.W.2d 731; *see also* N.D.R.Civ.P. 52(a).

2

III

A

[¶8]   Sternberg argues the district court erred in finding that he has serious difficulty in controlling his behavior. We agree. In addition to the statutory requirements, substantive due process requires the district court to construe "sexually dangerous individual" as meaning "proof of a nexus between the requisite disorder and dangerousness encompasses proof that the disorder involves serous difficulty in controlling behavior." *Matter of Muscha*, 2021 ND 164, ¶ 5, 964 N.W.2d 507 (quotations omitted); *see also Kansas v. Crane*, 534 U.S. 407, 412 (2002). The State must meet this burden with clear and convincing evidence. *Interest of Nelson,* 2017 ND 152, ¶¶ 4, 5, 896 N.W.2d 923 (citing *In re Johnson*, 2016 ND 29, ¶ 4, 876 N.W.2d 25). This required proof separates a "dangerous sexual offender," whom the court may subject to civil commitment, from "the dangerous but typical recidivist in the ordinary criminal case." *Muscha*, at ¶ 5 (citing *Matter of Didier*, 2019 ND 263, ¶ 4, 934 N.W.2d 417); *see also Crane*, at 411-413.

[¶9]   "[T]he Constitution's safeguards of human liberty in the area of mental illness and the law are not always best enforced through precise bright-line rules." *Crane*, 534 U.S. at 413. Such determinations are not demonstrable with "mathematical precision." *Id*. "There must be a causal connection between the disorder and inability to control behavior, which would likely result in future sexually predatory conduct." *Muscha*, 2021 ND 164, ¶ 5 (citing *Matter of R.A.S.*, 2019 ND 169, ¶ 7, 930 N.W.2d 162); *see also Interest of Skorick*, 2022 ND 141, ¶ 5, 977 N.W.2d 697. "The word 'difficult' indicates that the lack of control … was not absolute." *Crane*, at 411. "[A]n absolutist approach is unworkable" because it "would risk barring the civil commitment of highly dangerous persons suffering severe mental abnormalities." *Id*. at 411-12.

B

[¶10] It is insufficient for a district court to rely solely on prognostic factors unsupported by contemporary evidence or specific instances of conduct to

demonstrate that a person has a serious difficulty controlling behavior. *Interest of T.A.G.*, 2019 ND 115, ¶¶ 9-10, 926 N.W.2d 702. This Court reversed a district court when the court found that an individual had serious difficulty controlling behavior on the basis of an expert's opinion that the individual had serious difficulty, the fact that the individual had not completed all levels of treatment, and behavioral write-ups that did not share a nexus with a sexual disorder. *T.A.G.*, at ¶¶ 6-8. There, this Court wrote, "the findings for element three and the *Crane* requirement are not sufficient for this Court to understand the basis of the district court's order." *Id*. at ¶ 8.

[¶11] We have concluded a trial court errs when it grants a civil commitment on the basis that an individual has not sufficiently progressed in treatment. *In re Johnson*, 2016 ND 29, ¶ 11, 876 N.W.2d 25. "[C]ontinuing commitment solely on the basis of inadequate participation in treatment, without an explanation of how the person committed meets the statutory and constitutional requirements, reverses the burden from the State to the committed individual." *Id*.

[¶12] In *Interest of Nelson*, this Court reversed a district court finding that an individual had serious difficulty in controlling behavior. 2017 ND 152, ¶¶ 7-10. The district court based its determination on unlawful sexual conduct that had occurred twenty-three years before the commitment hearing, and it did not mention any examples of "impulsivity, deceitfulness, aggression, or other concerning behavior, outside of Nelson's criminal convictions from 2009 and 1992." *Id*. at ¶ 7 (quotations omitted). "This conduct is far too remote in time to the commitment hearing to have any impact on the consideration of whether Nelson is likely to engage in sexually predatory conduct in the *future*." *Id*.

C

[¶13] This Court defers to a district court's determination that an individual has serious difficulty controlling behavior when the determination is supported by specific findings demonstrating the difficulty. *Nelson*, 2017 ND 152, ¶ 8; *see also Johnson*, 2016 ND 29, ¶ 5; *Knoke*, 2021 ND 240, ¶ 15. We have held that

4

"contemporary evidence or specific instances" are necessary to demonstrate that a person has a serious difficulty controlling behavior. *T.A.G.*, 2019 ND 115, ¶¶ 9-10. The district court's findings must identify recent conduct or "describe anything that shows [an individual] has a *present* serious difficulty controlling his behavior." *Nelson*, at ¶ 9.

[¶14] In *Matter of Hanenberg*, this Court affirmed a district court finding that Hanenberg had serious difficulty in controlling his behavior because he had groomed and flattered a female therapist and hugged and touched a female volunteer in violation of prison rules, all of which occurred approximately within three years of his commitment hearing. 2010 ND 8, ¶¶ 2, 13-14, 19, 777 N.W.2d 62.

[¶15] In *Matter of Vantreece*, we upheld a finding of serious difficulty when the individual admitted that he had uncontrolled anger and rage and had to be moved to his own jail cell because he was compulsively masturbating, all approximately within two years of when the State petitioned to civilly commit him. 2009 ND 152, ¶¶ 2, 17, 19, 771 N.W.2d 585; *see also Johnson*, 2016 ND 29, ¶ 5.

D

[¶16] The district court found that Sternberg had serious difficulty controlling his behavior because of several factors, including his high actuarial test scores that provided prognostic evidence predicting the likelihood Sternberg will reoffend, the fact that Sternberg was diagnosed with mental disorders, Sternberg's disregard for the rights and safety of others, and his predisposition for sexual predatory behavior. In addition, the court relied on the professional opinion of Dr. Byrne as well as Sternberg's "lack of development of adequate coping skills and skills to manage his mental disorders." The State has the burden to show Sternberg has a serious difficulty controlling behavior—basing this finding on Sternberg's failure to develop adequate coping skills erroneously shifts the burden from the State to Sternberg. *See Johnson*, 2016 ND 29, ¶ 11; *Interest of T.A.G.*, 2019 ND 167, ¶¶ 6-8, 930 N.W.2d 166. Finally,

5

the court considered Sternberg's history of sexual crimes and his criminal history in general, which, as in *Nelson*, occurred twenty-one years before his civil commitment hearing. This criminal history "is far too remote in time to the commitment hearing to have any impact on the consideration" of whether Sternberg has substantial difficulty controlling behavior. *See Nelson*, 2017 ND 152, ¶ 7. The district court did not err in considering this evidence, but its findings are insufficient because they do not include "contemporary evidence or specific instances" that show Sternberg "presently" has serious difficulty controlling behavior.

E

[¶17] This record does not support a finding by clear and convincing evidence that Sternberg presently has a serious difficulty controlling behavior. Sternberg has not had a major sexual incident in prison since 2015, and according to his major incident report, he has not had any incidents at all since a 2019 write-up for smuggling. This 2019 write-up was non-sexual and does not have a sufficient nexus to Sternberg's sexual disorders. *See T.A.G.*, 2019 ND 115, ¶¶ 5-8. Dr. Byrne testified that he couldn't find any evidence in prison records indicating that "Sternberg [had] any difficulty controlling his sexual behavior" or his "violent behavior" in the five years before the commitment hearing. Sternberg's prison records, in fact, indicate that he had not had a reported incident of sexual misconduct in the six and one-half years preceding his commitment hearing. Dr. Byrne opined that Sternberg's "lack of consistent major write ups … are indicative of improved adjustment on his part," and he also noted that Sternberg received thirty-two positive behavior reports from 2012 to 2020. Sternberg completed sex offender treatment programs in 2001 and 2004. The State conceded at oral argument that Sternberg had completed a third treatment program from 2019 to 2020. The April 2020 discharge summary noted that he had shown "noticeable" growth, had gained some insight into his behavior, and was "engaged and willing and [a] workable member" of the treatment group. The State was burdened with proving by clear and convincing evidence that Sternberg has serious difficulty controlling his behavior. It has failed to do so.

6

## IV

[¶18] Because we conclude the district court's finding on the *Crane* factor was clearly erroneous, we do not discuss Sternberg's argument relating to the third statutory factor. We reverse the order of the district court.

[¶19] Jon J. Jensen, C.J.
     Daniel J. Crothers
     Lisa Fair McEvers
     Jerod E. Tufte
     Douglas A. Bahr