# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2023 ND 100

In the Interest of P.S.

State of North Dakota,                                    Petitioner and Appellee

v.

P.S.,                                                    Respondent and Appellant

## No. 20220298

Appeal from the District Court of McHenry County, Northeast Judicial District, the Honorable Michael P. Hurly, Judge.

AFFIRMED IN PART AND REVERSED IN PART.

Opinion of the Court by Jensen, Chief Justice.

Joshua E. Frey, State's Attorney, Towner, ND, for petitioner and appellee; submitted on brief.

Jonathon F. Yunker, Devils Lake, ND, for respondent and appellant; submitted on brief.

**Jensen, Chief Justice.**

[¶1]   P.S. appeals from a district court's judgment denying his petition to be discharged from civil commitment as a sexually dangerous individual. P.S. argues the court erred in finding he has serious difficulty controlling his behavior and that by concluding he must remain in a clinical setting, the court exceeded its authority under N.D.C.C. § 25-03.3-13 by ordering a specific treatment program—a role expressly assigned to the executive director of the North Dakota Department of Human Services. We affirm in part and reverse in part, concluding the court did not clearly err in determining P.S. has serious difficulty controlling his behavior, but did exceed its authority as established in N.D.C.C. § 25-03.3-13 by determining a specific treatment.

I

[¶2]   In 2004, at the age of seventeen, P.S. was convicted of gross sexual imposition. In 2005, he was found to be a sexually dangerous individual and committed for treatment. P.S. has petitioned for discharge and has been denied on multiple occasions. In the current proceeding the State's expert psychologist testified that P.S. has been diagnosed with several mental and sexual disorders, and that P.S. displayed signs of serious difficulty controlling his behavior. The psychologist testified to several incidents spanning P.S.'s institutionalization including exhibitionism against a female staffer and a peer, rape threats, viewing of pornography, a stalking incident during community placement, and displaying signs of anger and refusal to complete treatment after community placement was revoked. The psychologist also testified that P.S. "needs to have community outings where he's seeing people he finds attractive" and "if he's having those opportunities and he's succeeding, I think that after six months that includes those features, he's probably going to be ready for a post-commitment placement." The district court issued an order denying P.S.'s petition for discharge, concluding he was to remain in a clinical setting, and ordered him into the custody, care, and control of the executive director of the Department of Human Services.

[¶3]   The standard of review for the commitment of a sexually dangerous individual is well-established:

> This Court reviews civil commitments of sexually dangerous individuals under a modified clearly erroneous standard. *Matter of Knoke*, 2021 ND 240, ¶ 13, 968 N.W.2d 178 (citing *In re Nelson*, 2017 ND 28, ¶ 7, 889 N.W.2d 879). We will affirm a district court's decision unless it is induced by an erroneous view of the law or we are firmly convinced the decision is not supported by clear and convincing evidence. *Id*. The court must specifically state the facts upon which its ultimate conclusion is based. *In re Rubey*, 2012 ND 133, ¶ 9, 818 N.W.2d 731; *see also* N.D.R.Civ.P. 52(a).

*Interest of Sternberg*, 2023 ND 40, ¶ 7, 987 N.W.2d. 340 (quotation marks omitted). "This Court defers to a district court's determination that an individual has serious difficulty controlling behavior when the determination is supported by specific findings demonstrating the difficulty." *Id*. at ¶ 13.

[¶4]   The State must prove three statutory elements to show an individual remains a sexually dangerous individual under N.D.C.C. § 25-03.3-01(8). First, the individual must have engaged in sexually predatory conduct; second, the individual must have a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction; and third, these two combined elements must make the individual likely to engage in further acts of sexually predatory conduct which endanger the physical or mental health and safety of others. Additionally, substantive due process requires the individual's disorder results in that individual having serious difficulty in controlling behavior. *Sternberg*, 2023 ND 40, ¶ 8.

[¶5]   There must be a "causal connection" between a sexually dangerous individual's disorder and the individual's inability to control behavior such that it "would likely result in future sexually predatory conduct." *Sternberg*, 2023 ND 40, ¶ 9 (quoting *Matter of Muscha*, 2021 ND 164, ¶ 5, 964 N.W.2d 507). In describing this nexus further, this Court has noted that a district court cannot rely solely on prognostic factors, but must support its finding with

contemporary evidence or specific instances of conduct to demonstrate serious difficulty controlling behavior. *Id*. at ¶ 10.

[¶6] Specific instances should demonstrate that an individual has "*present serious difficulty*" controlling behavior. *Sternberg*, 2023 ND 40, ¶ 13 (quoting *In re Nelson*, 2017 ND 152, ¶ 9, 896 N.W.2d 923). The proximity of those instances to the commitment hearing assists in establishing this present difficulty. *See Nelson*, at ¶ 7 (finding two instances of sexual misconduct that occurred 23 years prior to the commitment hearing were "far too remote"); *see also Matter of Hanenberg*, 2010 ND 8, ¶¶ 14, 19, 777 N.W.2d 62 (finding two inappropriate instances with female professionals occurring within three years of a commitment hearing were sufficient); *Matter of Vantreece*, 2009 ND 152, ¶¶ 17, 19, 771 N.W.2d 585 (finding instances of uncontrolled anger and compulsive masturbation within two years of a commitment hearing were sufficient).

[¶7] Civil commitment should not be based solely on whether an individual has sufficiently progressed in treatment. *In re Johnson*, 2016 ND 29, ¶ 11, 876 N.W.2d 25. Inadequate participation in treatment without more "reverses the burden from the State to the committed individual." *Id*. Additionally, an individual's past criminal history, alone, is not sufficient to demonstrate that individual remains sexually dangerous. *In re Johnson*, 2015 ND 71, ¶ 9, 861 N.W.2d 484.

[¶8] Here, P.S. argues the district court erred in finding he presently has serious difficulty controlling his behavior. P.S. contends the court ignored evidence showing he had no negative incidents since 2020, he was well enough to be placed in a community setting for a brief time, and he received positive diagnostic scores on an assessment used in scoring recidivism. The court determined the statutory elements of N.D.C.C. § 25-03.3-01(8) were satisfied by finding the first element was met by stipulation; the second element was met because P.S. currently suffered from disruptive, impulse-control, and conduct disorder, voyeuristic disorder, specific paraphilic disorder, coprophilia, urophilia, and attention deficit, hyperactivity disorder; and the third element was met because P.S. engaged in several, recent instances of concerning

behavior from 2012 to 2022 showing he was likely to engage in further acts of sexually predatory conduct.

[¶9]   The district court then found that P.S. has serious difficulty controlling his behavior noting the "most recent manifestation" of this occurred "in Minot on April 4, 2020." The court found that while P.S. was in community placement in Minot, he walked past a home of a woman he found attractive at least twenty-two times over the span of a few days, and then violated curfew by leaving his residence at midnight, and knocked on the woman's door with the intent to ask her to use the bathroom or for sex. The court also discussed exhibitionism incidents that occurred in 2012, 2016, and 2019, angry outbursts that occurred in 2016, and deception by P.S. when he initially lied about stalking the Minot woman and watching pornography in community placement in 2020. The court also noted P.S. was unwilling to participate in treatment after his community placement was terminated.

[¶10] The district court identified at least six specific instances demonstrating P.S. had "present serious difficulty" controlling his behavior. At least three of these instances—the exhibitionism in 2019, the stalking incident in 2020, and hot-headed, violent behaviors associated with his refusal to participate in work assignments and treatment assignments after 2020—were recent and occurred within three years of P.S. petitioning for discharge. The most recent stalking incident occurred just two years prior, and is most demonstrative of P.S.'s behavior while actually living among others at risk for harm. These recent incidents support a finding that the requirement of proximity and "present serious difficulty" as illustrated in *Nelson*, *Hanenberg*, and *Vantreece* exists in this case. The court also coupled P.S.'s unwillingness to participate in treatment with contemporaneous acts that were additional to his original criminal convictions. These findings align with the requirements outlined in *Johnson*, 2015 ND 71, and *Johnson*, 2016 ND 29. We hold the court's findings of fact and conclusion of law that P.S. has serious difficulty controlling his behavior is supported by clear and convincing evidence and is not clearly erroneous.

4

## III

[¶11] The executive director of the Department of Human Services is responsible for making decisions regarding the appropriate course of treatment for a sexually dangerous individual. Section 25-03.3-13, N.D.C.C., states:

> If the respondent is found to be a sexually dangerous individual, the court shall commit the respondent to the care, custody, and control of the executive director. The executive director shall place the respondent in an appropriate facility or program at which treatment is available. The appropriate treatment facility or program must be the least restrictive available treatment facility or program necessary to achieve the purposes of this chapter. The executive director may not be required to create a less restrictive treatment facility or treatment program specifically for the respondent or committed individual.

The delineation of responsibility between a district court and executive director has been discussed by this Court previously. In *In re G.R.H.*, 2006 ND 56, ¶¶ 22, 27, 711 N.W.2d 587, we reiterated that the executive director has authority to decide the least restrictive available treatment program or facility, and that such authority does not violate due process or double jeopardy. In *Whelan v. A.O.*, 2011 ND 26, ¶ 7, 793 N.W.2d 471, we clarified that a district court may exercise limited judicial review as to whether the decision of the executive director was the least restrictive available treatment facility or program. We further explained that the executive director's authority to determine an appropriate facility or program cannot be circumvented by a district court at an initial commitment hearing. *See In re B.V.*, 2006 ND 22, ¶¶ 13, 17, 708 N.W.2d 877 ("We agree with the district court's determination that N.D.C.C. § 25-03.3-13 does not allow the district court to consider or determine treatment options, but rather places that determination with the Department of Human Services."). We now find that N.D.C.C. § 25-03.3-13 does not allow a district court to determine treatment options at a discharge hearing.

[¶12] Here, P.S. argues the district court clearly erred by exceeding its scope of authority when it ordered him to remain in a clinical setting despite the psychologist's recommendation that he may be ready for post-commitment

community placement within six months if he abided by certain criteria. On this issue, the court stated:

> The Court concludes [P.S.] has serious difficulty controlling his behavior. While [the psychologist] did recommend community placement within six months if [P.S.'s] risk triggers are tested and he submits to a polygraph test (likely due to his deception), **this Court disagrees with the recommendation**. Until [P.S.] demonstrates an actual ability to control his actions and improve his habit replacement, the Court concludes he should remain in a clinical setting.

It is the executive director of the Department of Human Services, and not a district court, who determines the appropriate facility or program at which treatment is available for a sexually dangerous individual. This authority remains vested in the executive director both at an initial commitment hearing and at a discharge hearing. By determining that a clinical setting was the only appropriate treatment option for P.S. and concluding P.S. must remain there, the court exceeded its authority, and encroached upon the executive director's statutory duty to make such a determination. The court erred by ordering P.S. to remain in a clinical setting. To the extent the court made a determination that fell within the authority of the executive director, that portion of the judgment is reversed.

IV

[¶13] We affirm the district court's order denying P.S.'s petition to be discharged from civil commitment as a sexually dangerous individual. We find the court did not clearly err when determining P.S. has serious difficulty controlling his behavior. We reverse the court's requirement that P.S. remain in a clinical setting, but affirm the court's order committing P.S. to the care, custody, and control of the executive director of the Department of Human Services until the executive director determines P.S. is safe to be at large and has received the maximum benefit of treatment.

6

[¶14] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr