# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2025 ND 171

In the Interest of Edward Skorick

Julie A. Lawyer, State's Attorney,                    Petitioner and Appellee

v.

Edward Skorick,                                       Respondent and Appellant

## No. 20250071

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable James S. Hill, Judge.

AFFIRMED.

Opinion of the Court by Bahr, Justice.

Isaac O. Lees, Assistant State's Attorney, Bismarck, ND, for petitioner and appellee; on brief.

Tyler J. Morrow, Grand Forks, ND, for respondent and appellant; on brief.

**Bahr, Justice.**

[¶1]   Edward Skorick appeals from a district court order denying his petition for discharge from commitment as a sexually dangerous individual. He argues the court's factual basis was insufficient to legally conclude he has serious difficulty controlling his behavior. We affirm.

I

[¶2]   Skorick has a history of committing sex offenses dating back to 1980. Skorick was incarcerated at the North Dakota Department of Corrections from April 2002 until his transfer to the North Dakota State Hospital in October 2018. In October 2019, the district court ordered Skorick committed as a sexually dangerous individual under N.D.C.C. ch. 25-03.3. Skorick previously petitioned for discharge and appealed the denial of his petitions. *Int. of Skorick*, 2020 ND 162, 946 N.W.2d 513 (reversed and remanded due to district court's reliance on an expert report not offered into evidence); *Int. of Skorick*, 2022 ND 141, 977 N.W.2d 697 (affirmed) (*Skorick II*); *Int. of Skorick*, 2024 ND 83, 6 N.W.3d 666 (affirmed) (*Skorick III*).

[¶3]   In August 2024, Skorick requested a discharge hearing under N.D.C.C. § 25-03.3-18. Dr. Peter Byrne, Ph.D., a licensed psychologist, completed an annual evaluation of Skorick and recommended his continued commitment on the ground Skorick remains a sexually dangerous individual who has serious difficulty controlling his behavior and who is likely to engage in further acts of sexually predatory conduct. Per Skorick's request, the district court appointed Dr. Stacey Benson, a licensed psychologist, to complete an independent evaluation of Skorick.

[¶4]   The district court held a discharge hearing and heard testimony from Dr. Byrne. Dr. Benson did not submit a report or testify at the hearing. After the hearing, the court issued an order denying Skorick's petition for discharge, finding by clear and convincing evidence that Skorick continues to be a sexually dangerous individual who has serious difficulty controlling his behavior.

## II

[¶5]   Our standard of review for civil commitments of sexually dangerous individuals is well-established:

> This Court reviews civil commitments of sexually dangerous individuals under a modified clearly erroneous standard. We will affirm a district court's decision unless it is induced by an erroneous view of the law or we are firmly convinced the decision is not supported by clear and convincing evidence. The court must specifically state the facts upon which its ultimate conclusion is based.

*Int. of Sternberg*, 2023 ND 40, ¶ 7, 987 N.W.2d 340 (cleaned up).

[¶6]   At a discharge hearing, the State has the burden of proving by clear and convincing evidence the committed individual remains a sexually dangerous individual. *Skorick III*, 2024 ND 83, ¶ 6. A sexually dangerous individual is one who (1) has engaged in sexually predatory conduct; (2) has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction; and (3) is likely to engage in further acts of sexually predatory conduct as a result of his disorder. N.D.C.C. § 25-03.3-01(7); *Skorick III*, ¶ 6. In addition to the three statutory requirements, to satisfy substantive due process, the State must also prove the committed individual has serious difficulty controlling his behavior. *Skorick III*, ¶ 7; *see also Kansas v. Crane*, 534 U.S. 407, 412-13 (2002).

## III

[¶7]   On appeal, Skorick argues the district court erred in denying his petition for discharge because the State failed to prove by clear and convincing evidence Skorick has serious difficulty controlling his behavior. The three statutory elements in N.D.C.C. § 25-03.3-01(7) are not at issue on this appeal.

[¶8]   An individual has "serious difficulty controlling behavior" if there is a "causal connection" or "nexus" between the individual's sexual disorder and inability to control behavior that would likely cause sexually predatory conduct in the future. *Matter of Muscha*, 2021 ND 164, ¶ 5, 964 N.W.2d 507. "This required

2

proof separates a dangerous sexual offender, whom the court may subject to civil commitment, from the dangerous but typical recidivist in the ordinary criminal case." *Sternberg*, 2023 ND 40, ¶ 8 (cleaned up).

[¶9] "The district court's findings must identify recent conduct or describe anything that shows an individual has a *present* serious difficulty controlling his behavior." *Sternberg*, 2023 ND 40, ¶ 13 (cleaned up). "To determine whether an individual has serious difficulty in controlling behavior, all relevant conduct may be considered. While conduct in proximity to the hearing is relevant, the past still has some relevance. The conduct does not have to be sexual in nature." *Matter of Didier*, 2023 ND 218, ¶ 8, 997 N.W.2d 837 (cleaned up). "Failure to attend treatment might demonstrate inability to control behavior just as violation of other institutional rules." *In re Johnson*, 2016 ND 29, ¶ 10, 876 N.W.2d 25.

[¶10] Relying on Dr. Byrne's testimony and 2024 annual evaluation report of Skorick, the district court found the State proved by clear and convincing evidence Skorick has serious difficulty controlling his behavior. Prior to addressing evidence of Skorick's serious difficulty controlling his behavior, the court reviewed Skorick's history of criminal offenses, including his "lengthy history of sexually offending against female children and adult females." The court also reviewed Dr. Byrne's testimony and 2024 Report that supported Skorick's "diagnostic profile of: (1) Other Specified Paraphilic Disorder, Hypersexual with Pedophilic, Voyeuristic, Exhibitionistic and Fetish Theft Behaviors, in a Controlled Environment; (2) Antisocial Personality Disorder; and (3) Alcohol Use Disorder, In Partial Remission, in a Controlled Environment." The court discussed the risk assessments conducted by Dr. Byrne, and that Dr. Byrne opined the risk assessments indicate Skorick is three to four times more likely to reoffend than others who have also been convicted of sexually motivated offenses. Dr. Byrne also noted that Skorick's scores remain unchanged from the previous review period and he continues to score high.

[¶11] Addressing whether Skorick has serious difficulty controlling his behavior, the district court discussed the nexus between Skorick's mental disorders and his sexually offending behaviors. The court noted Dr. Byrne testified "Skorick has serious difficulty controlling his behavior. Dr. Byrne

discussed how Skorick's diagnoses of Other Specified Paraphilic Disorder, Antisocial Personality Disorder, and Alcohol Use Disorder impacts Skorick's emotional, volitional, and behavioral ability and causes him serious difficulty in controlling his behavior." Earlier in its order, the court explained "Dr. Byrne outlined how Antisocial Personality Disorder is not a sexual disorder; however, the disorder predisposes Skorick to engage in sexual violence against others." Continuing, the court stated:

> Dr. Byrne testified that Skorick's Antisocial Personality Disorder results in him disregarding the rights of others, through acting impulsively, irresponsibly, and with a lack of remorse towards those who he hurts. This, combined with his diagnosis of Other Specified Paraphilic Disorder, indicate Skorick has a hard time controlling his sexual behaviors. Dr. Byrne opined that Skorick acts out on his ongoing and intense sexual fantasies evident in the number of sexual offenses related to exhibitionism, GSI, voyeurism, and fetish theft. Additionally, Skorick's alcohol use disorder is relevant to show the lowering of inhibitions for Skorick's fantasies, allowing Skorick to put them into action.

[¶12] Next, the district court considered Skorick's behavior, listing several acts committed by Skorick since his last evaluation. In the current review period, Skorick received five write-ups which Dr. Byrne termed "behavior acknowledgments" and "treatment interfering behaviors." The write-ups were for failing to follow rules, verbal aggression, bullying, and impulsive decision making. Additionally, Dr. Byrne noted in his report a series of other issues that did not result in write-ups, including Skorick mumbling under his breath, flipping off staff, lying, ignoring staff instructions, and making rude and derogatory comments to staff. The court noted, "Dr. Byrne testified that in determining this factor, he considers the factor that Skorick is currently in a highly controlled environment, and that his serious difficulty controlling his behavior would likely be worse in a less restrictive environment." The court further noted, "Dr. Byrne opined that Skorick's ability to control his behavior would not likely improve if he was released into the community as he still has serious difficulty in controlling his behavior while in the controlled environment of the State Hospital."

4

[¶13] The district court also addressed Skorick's lack of participation and progress in treatment. It explained Skorick refused "to attend or participate in group for the entire review period. Skorick is not actively being treated or assisted in his rehabilitation needs." The court further explained Dr. Byrne noted "Skorick has engaged in no meaningful treatment to address his substantial sexual risks and problems and 'it is very likely that the secure environment is "containing" his sexual and problematic behavior.'"

[¶14] Finally, the district court explained that, "for this review, Skorick was appointed and underwent an independent examination. At the evidentiary hearing, the only report and testimony offered was from Dr. Byrne. The independent examiner's opinion or findings were not discussed." The court explained it is proper for it to draw a negative inference from Skorick's failure to call his independent expert psychologist at the evidentiary hearing.

[¶15] Skorick cites three cases to support his argument the State failed to prove by clear and convincing evidence he has serious difficulty controlling his behavior. The cited cases are materially different from Skorick's situation and do not support his position.

[¶16] In *Matter of R.A.S.*, 2019 ND 169, 930 N.W.2d 162, involved the petitioner refusing two doses of medication. We explained:

> The psychologist testified to a situation where R.A.S. requested a lower prescribed level of medication. The State Hospital agreed and revoked some of R.A.S.'s privileges at the onset of the lower dosage to determine whether the new dosage met his medical needs. R.A.S. protested the revocation of privileges by refusing two doses of his medication, but later agreed to remain on the higher dosage in return for his privileges continuing intact. The psychologist testified R.A.S.'s refusal to twice take the prescribed medication demonstrated his inability to control his behavior.

*Id.* ¶ 3. The district court concluded R.A.S.'s decision not to take the two doses of his medication demonstrated his inability to control his actions. *Id.* ¶ 11. "The district court did not make any further findings supporting R.A.S.'s serious difficulty controlling his behavior." *Id.* We held "[t]he isolated instances of

5

refusing two doses of prescribed medication do not establish a serious difficulty controlling behavior." *Id.*

[¶17] In *Matter of J.M.*, 2019 ND 125, ¶ 4, 927 N.W.2d 422, the district court received testimony "about an incident where J.M. threw a rock at another resident and an altercation with another resident investigated by the State Hospital." The court also received evidence of "behavioral write-ups J.M. received for writing negative comments about other residents in his journal and withdrawing twelve dollars more than he was allowed to from the ATM. Nothing in the record suggest[ed] J.M. did anything inappropriate with the money." *Id.* The State's expert and J.M.'s individual evaluator "disagreed on what these incidents represented about J.M.'s likelihood to engage in further acts of sexually predatory conduct." *Id.* J.M.'s individual evaluator testified that "the State Hospital cleared J.M. of any wrongdoing in the altercation"; the experts differed on whether the incident in which J.M. threw a rock at another resident was "horseplay." *Id.* ¶ 15. A three-justice majority determined "[t]he limited rule infractions relied on in this case do not establish the necessary connection between J.M.'s disorder and his likelihood of sexually reoffending." *Id.* ¶ 16. The majority explained the State's expert's report, "relied on heavily by the district court, was based on J.M.'s history and prior patterns of treatment progress." *Id.* ¶ 18. The majority noted "[t]he record establishes that J.M. has not acted out sexually, has not had any sexual in nature rule violations, and has either completed his sex offender treatment or made substantial progress since his last evaluation." *Id.* The majority concluded "the State failed to establish a nexus between J.M.'s limited rule violations and his likelihood of sexually reoffending." *Id.*

[¶18] Skorick also relies on *Interest of T.A.G.*, 2019 ND 167, 930 N.W.2d 166. T.A.G. had participated in treatment and had a behavioral write-up based on a statement about "cream pie," which was apparently interpreted as a sexual comment. *Id.* ¶ 7. T.A.G. "testified that he did not say what was reported and there was no sexual innuendo in what he did say." *Id.* The district court concluded T.A.G.'s progress in treatment was "insufficient" and he continues to have behavioral issues. *Id.* ¶ 9. This Court wrote, "Lack of progress within treatment may indicate serious difficulty controlling behavior, but one does not

equal the other. Lack of progress in treatment alone is insufficient to determine an individual has serious difficulty controlling personal behavior, and specific findings are required to meet the *Crane* requirement." *Id.* ¶ 10 (citation omitted). We further noted the district court's specific findings addressing "behavioral issues" "do not exist beyond one statement regarding a 'cream pie.'" *Id.* ¶ 11. We stated T.A.G.'s "status in treatment and one statement regarding 'cream pie' do not establish a serious difficulty controlling behavior sufficient to satisfy the *Crane* due process requirement." *Id.*

[¶19] Skorick's behavioral issues go beyond the limited behavioral incidents in *Matter of R.A.S.*, *Matter of J.M.*, and *Interest of T.A.G.* Skorick received five write-ups; the State's expert also noted a series of other issues that did not result in write-ups. Moreover, Skorick did not simply have insufficient progress in treatment like T.A.G.; Skorick refused "to attend or participate in group for the entire review period." As in *Skorick II*, "[t]he evidence shows not only a lack of progress but also a lack of participation." 2022 ND 141, ¶ 11. "Failure to attend treatment might demonstrate inability to control behavior just as violation of other institutional rules." *In re Johnson*, 2016 ND 29, ¶ 10. Moreover, while lack of progress in treatment alone is insufficient to show Skorick has serious difficulty controlling his behavior, the district court did not rely exclusively on Skorick's refusal to participate in treatment. Finally, unlike *Matter of J.M.*, where two experts disagreed whether J.M. met the criteria for a sexually dangerous individual, 2019 ND 125, ¶ 3, the State's expert's testimony was unopposed. Although Skorick exercised his right to an independent psychological evaluation, he did not call his independent psychologist to testify at the discharge hearing. The district court appropriately found a negative inference by Skorick's failure to call his independent examiner at the evidentiary hearing. *In re E.W.F.*, 2008 ND 130, ¶ 16, 751 N.W.2d 686 ("It was not improper for the district court to draw a negative inference from E.W.F.'s failure to call his independent expert psychologist and to use the negative inference in determining whether there was clear and convincing evidence of E.W.F.'s likelihood of engaging in further acts of sexually predatory conduct."). This case is most comparable to *Skorick III*, where we affirmed the district court's denial of Skorick's petition for discharge when he "made no progress in his treatment

because he declined to participate and received three write-ups." 2024 ND 83, ¶¶ 9, 12.

[¶20] The district court made adequate findings regarding whether Skorick has serious difficulty controlling his behavior. The court's finding Skorick has serious difficulty controlling his behavior is supported by clear and convincing evidence and is not clearly erroneous.

IV

[¶21] We affirm the district court's order denying Skorick's petition for discharge.

[¶22] Jon J. Jensen, C.J.
       Daniel J. Crothers
       Lisa Fair McEvers
       Jerod E. Tufte
       Douglas A. Bahr